## Greenwood's Appeal.

1. A trustee, *ex maleficio*, when he has acted in good faith, is not liable to account for what he might have received on the sale of oil, but for what he actually received.

2. In the absence of fraud or bad faith in the sales, the true measure of damages is the actual sales.

November 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Butler county*: Of October and November Term 1878, No. 54. In Equity.

Bill in equity filed by G. G. B. Greenwood, assignee of John T. Perdue, against George S. Long and Mary Ann Long, his wife, by amendment, Mrs. Milinda H. Pennock and Horace A. Pennock, her husband.

The account to be taken and stated in this case was of the production of two oil-wells, being No. 1 and No. 2, on a lease taken in the name of John T. Perdue, consisting of eight and one-fourth acres on the Widow Smith farm in Fairview township, Butler county, of the one-half interest in which he was held to be a trustee for Mrs. Mary Ann Long, for her assigns, by a decree of the Supreme Court of this state, made on the 8th of January 1877 (see Long *v.* Perdue, 2 Norris 214), as well as of the cost and necessary and proper expenses of putting down and operating said wells. After said decree an arrangement was made between the parties by which the plaintiffs have been receiving their proportion of the proceeds of said leasehold, so that the account to be taken by the master ended at the date of January 8th 1877, as to the production.

The case was referred to a master who took testimony, and after argument made a report, wherein he, inter alia, said:

" The learned counsel who argued the cause on part of plaintiffs before the master, contended that the defendant, having been found and declared a trustee *ex maleficio* for plaintiffs, should be charged with the highest price per barrel for the oil that oil reached at any time between the time of its production and the accounting for it; and cited in support of his argument Bank of Montgomery *v.* Freese, 2 Casey 147 ; Backenstoss *v.* Stoller's Admrs., 9 Id. 251 ;

Robinet's Appeal, Donnelly's Estate, 12 Id. 189; Hill *v.* Canfield, 6 P. F. Smith 459; Persh *v.* Quiggle, 7 Id. 255; Neiler *v.* Kelly, 19 Id. 408; Annual United States Digest 1850, 417, sect. 38, and case of Sly *v.* Lyon, C. Ga. 530, there cited; also, Freeman *v.* Cook, 6 Ired. 173; Jenkins *v.* Comier, 26 Ala. 212; Caison *v.* Ernst, 9 Harris 90, and Sedgwick on Measure of Damages, sect. 475, &c.

"On the other hand, it was contended on the part of the defendant, that he should only be charged with the prices received by him for the oil sold, and interest thereon after deducting credits to which he is entitled; the proof being that he had sold the oil in good faith for the best prices he could get in the market at the dates of his several sales as reported.

"The plaintiffs having disputed the prices reported by defendant, it was agreed that the master should go with the parties or their solicitors to Oil City, and take such testimony as might there be offered on part of plaintiffs as to the market-price of oil on the several days on which defendant alleged he had made sales of oil. This was done, and the quotations of the Oil City Derrick, of the highest and lowest prices of oil sold on the dates mentioned, with the testimony of witnesses as to the correctness of those quotations, were taken, and are found with the other testimony herewith returned. Afterwards, upon the plaintiffs' theory of the case, and at their request, it was agreed that the master should return to Oil City, and take from the files of the Oil City Derrick, the quotations of the highest and lowest prices of oil per barrel for each and every day from December 12th 1872, until January 8th 1877, which he did, and said quotations are returned with the testimony herein. * * *

"After careful consideration of the testimony and proofs, the master has concluded that a just and proper measure of damages in this case will be adopted by charging the defendant with the highest market-value of each run of oil on the day it is run, and interest from such date. The prices are obtained from the quotation from the Oil City Derrick, and are the prices that the master was satisfied do not include pipeage."

Exceptions were filed to this report, which the court, McJunkin, P. J., overruled, when defendant took this writ, and, inter alia, made the following assignments of error:

2d. The court erred in overruling the defendants' second exception to the report of the master, which was as follows:

The master erred in adopting as the measure of damages the highest price at which oil was sold on the day that each run of oil was made from the wells into the pipe-line. The price of the oil should have been fixed or charged to the defendant at the price he actually received, which is fully shown by the testimony, with interest from that date, after deducting proper credits.

[Greenwood's Appeal.]

3d. The court erred in overruling the defendant's third exception to the report of the master, which was as follows:

The master erred in receiving as testimony and basing his conclusion upon quotations of prices from the Oil City Derrick, of oil for each day for the time oil was run from these wells, as the evidence was objected to, and incompetent and unreliable. This and any other testimony taken by the master was not such evidence as he could, with reasonable certainty, find the highest and lowest prices of oil on the days mentioned. The master states " the prices are obtained from the quotations from the Oil City Derrick," in all of which he erred. The defendant should have been charged alone for the price which he received for the oil.

27th. The court erred in continuing to exercise jurisdiction, make orders and decrees in this case after the appellant, John T. Perdue, was declared a bankrupt, to wit: December 11th 1877.

*Thompson & Scott*, for appellant.—If the trustee sold in good faith why should he be called upon to account for more than he received? That he made mistakes may be true, he may have sold sometimes too soon, and other times not soon enough, but in both cases he sold in good faith and for the best price he could get. He was compelled to run oil frequently for want of storage at the wells. This was not of choice but of necessity, and because he was thus compelled to run, is he to be charged the highest price on such days as if this act of running oil were to be punished? The master wrongs him by charging the highest or assumed price on the particular days he was compelled to run, although the proof was clear for what the oil was sold. The plaintiff in error was bound to use ordinary diligence in selling the products of the wells, and when he sold in good faith, his own with Mrs. Long's share, he should not be charged with more than he actually received. The error was not alone in the price fixed, but in receiving as competent evidence thereof the quotations of a newspaper. It is not alleged that the editor or proprietor of the Derrick had personal knowledge of the price of oil, as they only published from day to day the quotations as furnished by others.

*S. F. Bowser*, for appellees.—As a principle of law there is but one measure of values for articles obtained otherwise than by purchase, and that is the market value; and Perdue having wrongfully possessed and used that which was not his own, must account to appellee for the same upon the basis of the highest market prices. This is the basis upon which the master finds, and he takes the quotations of actual sales of oil from the Oil City Derrick, a reliable paper published at the centre of the oil market. But there is another question raised—admitting the assignee did appear as set

forth, had the court below power to act further? This court had long prior decreed Perdue a trustee *ex maleficio* of appellee, and ordered him to account as such. Hence Perdue accounts to appellee as trustee, and the assignee had no power to interfere with the rendition of this account in pursuance of said order. The property or fund held by the bankrupt in trust did not pass by assignment: Bankrupt Act, March 2d 1867, sect. 5053. And it becomes a serious question whether the assignee had any standing in this court.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

There are twenty-seven assignments of error in this case. Most of them relate to questions of fact, and may be at once dismissed, as the evidence is not before us. There are enough left, however, to enable us to review to some extent the principles upon which the case was decided by the master and the court below.

The liability of John T. Perdue to account to Mrs. Long was settled in Long *v.* Perdue, 2 Norris 214. It was there held that the denial of Mrs. Long's right by Mr. Perdue made him a trustee *ex maleficio*, not from the time of the denial, but from the date of the original agreement; and that he must account to her for the proceeds of the well. An account was accordingly decreed by the court below, and a master appointed for that purpose. The defendant appeared before the master, and furnished an account of the actual sales of the oil, and claimed credit for certain items of costs and expenses. The master rejected the defendant's account of sales so far as prices are concerned, and adopted an arbitrary rule for fixing the value of the oil. This will appear from the following extract from his report: "After careful consideration of the testimony and proofs, and much study, the master has concluded that a just and proper measure of damages in this case will be adopted by charging the defendant with the highest market value of each run of oil on the day of its run, and interest from such date." The case was disposed of by the master, and the court below, upon the theory that the defendant being a trustee *ex maleficio*, was liable to account, not for what he received for the oil, but for what he might have received for it. No authority was cited for this proposition, except those referred to by the plaintiff's counsel before the master, and which do not apply. They were cases of technical trusts, or of the conversion of stocks deliverable upon a particular day. The distinction between such cases and the one in hand is manifest. The defendant was lawfully operating a well in which he had a joint interest with the plaintiff. It was his duty, as settled by the former decree of this court, to account to plaintiff for the proceeds of half the oil. Under such circumstances there is no rule of law or equity which would make him responsible for

[Greenwood's Appeal.]

the highest market price of the oil upon the days on which it was turned into the pipe lines. In the absence of fraud or bad faith in the sales, neither of which is pretended, the true measure of damages would be the actual sales. The oil market, as is well known, is fluctuating, and at times experiences violent changes. Upon the day when the plaintiff turned the oil into the pipe lines, he may have been unable to sell, or he may have had reasons to anticipate a rising market. Nor do we attach importance to the fact, found by the master, that defendant owned other wells and produced other oil, which was also run into the tanks and pipe lines, and made other sales upon other days and at different prices. Such facts, if conceded, have no bearing upon the sales of this particular oil.

We are of opinion that the rule laid down for the measure of damages was erroneous. As there was no bad faith shown, the defendant should have been charged only with what he received for the oil.

In this view of the case the matter referred to in the third specification becomes unimportant. In any event we have no evidence before us, and cannot say whether it justified the admission of the "Oil City Derrick" as authority upon the state of the market. Besides, the master states that he took these quotations by the agreement of the parties.

It was also alleged (27th assignment) that the court erred in continuing to exercise jurisdiction after the said John T. Perdue had been declared a bankrupt. The record shows a certificate, under the seal of the District Court of the United States, for the Northern District of Ohio, that the said Perdue had been adjudged a bankrupt on December 8th 1877. The assignee was permitted to come in and defend in the court below, and this appeal was taken by him. I see no reason why the parties may not go on in the state court and get their judgment. No attempt to restrain them through the United States courts has been made. The claim here being clearly provable in bankruptcy, the defendant's discharge would render a decree of little avail, however. Yet it may be used to secure a dividend against his estate.

> The decree is reversed at the cost of the appellees, and the report is ordered to be sent back to the master to restate the account in accordance with the principles indicated in this opinion.