[No. 7553.   Decided May 1, 1909.]

L. P. COONROD *et al.*, *Appellants*, v. I. J. STUDEBAKER *et al.*, *Respondents.*[1]

HUSBAND AND WIFE—CONVEYANCES—SEPARATE PROPERTY OF WIFE. A trade of separate property of two wives, arranged by their husbands, is ratified by the wives by their joining in deeds of the property.

VENDOR AND PURCHASER—PERFORMANCE—DEFECTS IN TITLE—SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY. Where, upon a trade of property, each party agreed to furnish an abstract showing a good and sufficient title within thirty days, specific performance will not be decreed in favor of a plaintiff whose abstract of title was defective, where it appears from plaintiff's testimony that he acknowledged the defect, after one attempt to correct it, and that defendant, having waited for a reasonable length of time after the thirty days, then indicated that he would not be further bound by the contract.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered August 21, 1908, granting a nonsuit at the close of plaintiffs' case, dismissing an action for specific performance. Affirmed.

*Geo. W. Shaefer*, for appellants.

*W. B. Ridle* and *Elihu E. Adams*, for respondents.

DUNBAR, J.—This is an action to enforce the specific performance of a contract for the sale and exchange of real property. It is unnecessary to set forth the contract, but, in short, the plaintiff L. P. Coonrod agreed, for a certain

[1]Reported in 101 Pac. 489.

consideration, to sell certain city property in Kansas City, Missouri, to the defendant I. J. Studebaker, who, in turn, agreed to sell to the plaintiff certain property in Adams county, in the state of Washington. Said sale was to be made within thirty days, and it was agreed that within that time each party should furnish an abstract of title to the property to be conveyed by him, brought down to date of this contract, showing a good and sufficient title. That was the language of the closing sentence of the contract. On the 11th day of November, the plaintiffs executed a warranty deed to the defendants of the land which they had contracted to convey, and at the same time the defendants executed a warranty deed to the plaintiffs conveying the land which they had agreed to convey. These deeds were executed on the 11th day of November, being one day after the time had expired within the contract, but we think the testimony plainly shows that this time was waived by the defendants. After examining the plaintiffs' abstract, the defendants raised objections to the plaintiffs' title as shown by the record. An attempt was made by the plaintiffs to correct the abstract, and a second abstract was obtained, which was also objected to, the abstract not showing title which plaintiffs demanded. About the 9th day of December, the defendant indicated that he would not longer be bound by the contract, and on the 15th day of December refused to convey the land specified in the contract, and this suit was shortly thereafter brought, setting up the violation of the contract and asking for specific performance. The answer denied that the contract had been complied with by the plaintiffs, averred that the defendants had never been furnished with a marketable title, and that they had elected to rescind the contract. At the close of plaintiffs' testimony, a motion was made for nonsuit, which was granted, the court remarking:

"My recollection is that the supreme court ruled upon a very recent case and held simply this: that where the agree-

3—53 WASH.

ment was that the abstract was to be satisfactory and the parties submitted it to an attorney and the attorney rejected it, that you could not compel a specific performance. I think this motion should prevail, Mr. Shaefer. I do not see how the court could perform this contract under the plaintiff's own testimony. The plaintiff himself testified—the very last conversation—the defendant told him he was liable to sell the property to somebody else. Now, that shows the abandonment of the contract, because if he still considered himself held by the contract, he would not talk about selling it to somebody else. I think on the testimony of the plaintiff himself that this motion should be sustained."

We think the motion should be sustained for the last reason assigned by the court. When the abstract was presented, an opinion was filed by one Riddle, holding that the title was not good. The defendants also obtained an opinion from attorney Adams to the same effect.

Many questions are discussed in this case which it seems to us are not pertinent. Objections are raised by the appellants, that the court erred in not admitting the opinion of an abstract company, in answer to the opinion rendered by Adams. As we shall see further on, though, the opinion of the abstract company sufficiently affirmed the opinion rendered by attorney Adams to warrant the defendants in objecting to the title. The respondents contend that it was shown that the land in question, both that of the plaintiffs and that of the defendants, was the separate property of the two separate spouses, and that, therefore, this action could not be maintained. But a sufficient answer to that objection is that the testimony shows that deeds were executed by the plaintiff L. P. Coonrod and his wife to the defendant I. J. Studebaker, and by the said defendant and his wife to the plaintiff L. P. Coonrod, conveying this land in accordance with the contract which had been made between the husbands, and this was a ratification of the contract entered into by the husbands.

It is also contended by the appellants that some of the ob-

jections raised by the respondents are not tenable, because the statutes of limitation in the state of Missouri would bar any claim or the bringing of any action for the possession of this land. But it is established beyond necessity of citing authority that, under a contract like this, the party purchasing is entitled to a marketable title. The purchaser cannot be put to the peril of hunting up testimony outside of the record, or of ascertaining whether there are any minor heirs who might not be precluded by the statute, or any testimony of that kind; but has a right to a clear title as shown by the record. The testimony in this case is meager, but it shows that, when the title was objected to, the title company which furnished an opinion for the defendants agreed that, while the most of the objections raised by the respondents were not tenable, there were certain defects shown by the abstract which would have to be corrected before a good record title was shown. The testimony is, that an attempt was made to do this; that the abstract was returned to Kansas City, and that certain corrections were made; that it was not returned until about December 9. At that time there were still objections made by the respondents to the title, and it seems that these objections were also concurred in by the title abstract company, the appellant Coonrod testifying to the meeting between him and the defendant on the 9th:

"A. Yes, there was. We discussed pro and con—the conversation, or rather the objection Mr. Adams had raised and the answers the title company had made to them, and one objection I read that the title company had made the two both agree upon, and I told him that I would send the abstract back and have it corrected. Q. Well, what did he say to that? A. He said that if he still had the property when that came back and the abstract was made satisfactory, and he still had the property, it was a trade."

So that it would seem that there was no further waiver of time by the respondent, and that he did not consider himself bound any longer, but that if, when the abstract was made

satisfactory he saw fit to make the trade, he would do so. The same witness again testified:

"A. He objected to certain phases of the abstract and said it would take too long to get the title perfected, and I told him the only vital objection that I could find was the first page not being certified to. Q. Did you have them certified after? A. I did. Q. Now, did he at the time tell you that he declared and cancelled this contract, declared it null and void? A. No, not at any time."        .

Again:

"Q. And you say he never told you that the deal was off; that it had taken you too long to straighten your title? A. No, not till December and then he didn't say it was off point blank."

Again:

"Q. And he told you also at that time that if later on, if he still had the property that he might possibly deal with you? A. That was the last conversation we had in his office, early in December. Q. When he said that? A. Yes. Q. And then did you have a conversation thereafter you say in the early part of December? A. Well, that was about the middle of December. Q. The last conversation you had? A. That was the last conversation."

Now, this is substantially the testimony of the appellant in relation to the objection of the title and the time agreed to by the respondent for the correction of the abstract. It seems, under the testimony adduced, that it is not necessary to go into the question of title in all its detail, as it is conceded by the appellant that at every time there was an objection made to the title, the objection in some material particular was admitted. The respondent having waited a reasonable length of time and the abstract still having to be corrected at the time he saw fit to rescind, he was justified in refusing to perform the conditions of the contract, and of course the appellant cannot enforce specific performance

unless he was able to comply with the conditions of the contract upon which he relied.

The judgment is affirmed.

RUDKIN. C. J., CHADWICK, FULLERTON, MOUNT, and CROW, JJ., concur.