12 So.2d 397

**HYATT et al. v. OGLETREE.**
8 Div. 221.

Court of Appeals of Alabama.
Nov. 3, 1942.

Rehearing Denied Nov. 24, 1942.

Scruggs & Creel, of Guntersville, for appellee.

Marion F. Lusk, of Guntersville, for appellants.

grantor refused to do so, can recover the sum so paid from the grantor.

The facts are:

· The United States Internal Revenue Collector filed a tax lien against the land, January 21, 1938, under Revised Statutes, Section 3186, Title 26 U.S.C.A. §§ 1560–1562, 26 U.S.C.A. Int.Rev.Code, §§ 3670–3672, at which time one Bailey owned the property. Some years prior to this, Bailey had given a mortgage thereon to defendant, Ogletree. In 1939, the mortgage being in default, Bailey executed a deed in lieu of foreclosure, conveying the property to his mortgagee, Ogletree. Thereafter, according to the stipulation of facts in the bill of exceptions: "Mr. Bailey traded his right to the lands to Mr. and Mrs. Hyatt, the plaintiffs, and they went to Dr. Ogletree and had him execute a quitclaim deed to the Hyatts. The consideration for the land was paid to Dr. Ogletree and he received all of it; the amount received by Dr. Ogletree was no more than the mortgage indebtedness, the amount paid by Hyatt was $700.00, which was less than the amount owing on the mortgage at the time of foreclosure by several hundred dollars, and Dr. Ogletree received all the money paid by the Hyatts, and at Bailey's request, executed to the Hyatts a quitclaim deed, sometime later the plaintiffs went to Dr. Ogletree and obtained from him a warranty deed and the parties are not agreed upon what took place at that time, but no money passed when it was executed." Neither party appears to have known of the existence of the lien until after the giving of the quitclaim deed and it appears that Ogletree's first knowledge of it was after he had given the warranty deed.

The quitclaim deed from Ogletree to Hyatt, mentioned in the stipulation above, was under date of October, 1939, and the warranty deed, February 23, 1940. Soon after the giving of the warranty deed, Hyatt demanded that Ogletree discharge the tax lien, still pending against the land, and Ogletree declined to do it. Hyatt then paid it, and in May, 1940, filed the present suit for reimbursement.

The only disputed facts are those surrounding the execution of the warranty deed.

The suit is for breach of warranty in this second deed. The lower court, sitting without a jury, rendered judgment for the defendant and the plaintiff, Hyatt appeals.

SIMPSON, Judge.

The suit is for breach of general covenants of warranty in a deed.

The appellant, Hyatt, was the grantee who sues the grantor, Ogletree.

(The plaintiffs, husband and wife, are referred to as singular.)

The recited consideration of the deed is "one dollar and other considerations", but it is conceded that nothing was paid. The deed contains a recital that a quitclaim deed, conveying the property, was previously given by the grantor to the grantee and that the warranty deed was "made to perfect and warrant the title in the grantee."

The question presented by the appeal is whether, under the facts, the grantee, who paid off a tax lien to clear his title after

Our first observation is that recovery, if due, can rest only upon one of two hypotheses, either: (1) the second deed (warranty) must have been an entirely separate transaction for which value was paid (in which case recovery would be limited to the consideration paid), or, if no consideration was paid therefor, (2) the last conveyance must have been given to reform the first which, by mutual mistake of the parties, did not express their true intention. In this latter event, the second (warranty) deed would be supported by the consideration of the first (quitclaim) deed.

### The First Theory.

This proposition is easily disposed of by adverting to the uncontradicted evidence, showing that no consideration was paid for the new, warranty deed.

■■ Viewed in this aspect then, as a new and independent transaction, unrelated to the original transaction, there manifestly can be no recovery, for the plaintiff is limited therein to the consideration paid. "The damages for the breach of a covenant against encumbrances are to be assessed at such a sum as will afford a just compensation for the injury actually suffered by the covenantee, not, however, to exceed the consideration paid", etc. 14 Am.Jur. 599, Section 178; Mixon v. Burleson, 203 Ala. 84(2), 82 So. 98; 61 A.L.R. 140 et seq.

The authorities cited by appellant (Stewart v. Stewart, 171 Ala. 485, 54 So. 604, Ann.Cas.1913A, 925; Bethea v. McCullough, 195 Ala. 480, 70 So. 680), holding that in the absence of fraud or mistake the grantor may not dispute the operation and effect of a deed reciting a nominal consideration, have no applicability to the principle here involved.

■ The consideration of the deed is only prima facie and, generally, may be inquired into. "Parol evidence is admissible to show the true consideration of like kind as expressed in the deed, that it is greater or less, but evidence going to show a consideration of a different kind is not admissible." Union Bank & Trust Co. v. Royall, 226 Ala. 670, 672, 148 So. 399, 401; Pruett v. First National Bank, 229 Ala. 441, 444, 157 So. 846; Gilliland v. Hawkins, 216 Ala. 97, 101, 112 So. 454.

### The Second Theory.

No new consideration was paid for the new deed and, according to its recitals, it was "made to perfect and warrant the title in the grantee; a quitclaim deed was made from the same grantors to the same grantee conveying the same property * * *."

The contention of appellant is conceded, that, if through mutual mistake, the original, quitclaim deed did not express the real intention of the parties and equity could reform it to so express that intention, then the present suit has merit.

The rule is: when a written contract or conveyance does not express the true intention of the parties, due to fraud or mutual mistake or a mistake of one party which the other at the time knew or suspected, it may be revised by a court of equity. Code 1940, Title 9, § 59; Title 47, § 136.

■ But, to entitle a complainant to such relief, the proof must be clear, exact and convincing that the intention and agreement he would have substituted in the instrument was, in fact, that of both parties thereto. If the proof is uncertain in any material respect, relief will be denied. Kelley v. Spencer, 213 Ala. 612, 105 So. 802; Lipham v. Shamblee, 205 Ala. 498, 88 So. 569.

■ The principle results that (except in certain cases not here pertinent) where equity could reform such a deed, the parties may correct it by a subsequent instrument to effectuate their real intention, without a new consideration. 26 C.J.S., Deeds, § 31, p. 222.

In order for the appellant to recover under this hypothesis, the evidence must satisfy the dictates of the foregoing rule, viz: that by mutual mistake a quitclaim deed was first given and accepted, whereas the intention of both parties was that a warranty deed be given, and that to carry out this real intention the subsequent warranty deed was given to reform the previous instrument, and therefore supported by its consideration.

If this be true, then the foregoing rule prevails and recovery for breach of warranty would be due. But, as we view the evidence, this fact is not clearly and convincingly proven, but is in dispute.

The transaction of the quitclaim deed is not developed by the evidence except as appears in the agreed stipulation quoted. Nothing is shown there to support the claim that a different deed, from the (quitclaim) one accepted, was intended.

The plaintiff did testify that when he requested the new deed, "Dr. Ogletree

looked at it and said; 'I thought I made that kind to begin with—where do you want to go to make it?'; that plaintiff suggested the First National Bank and the Ogletrees signed and acknowledged it there." But, even here, the plaintiff's testimony shows that his request was based, not upon a claimed mutual mistake of the parties in the original transaction of the quitclaim deed, but upon the fact that "he would have to have it (a warranty deed) to complete his abstract of title."

The testimony of the defendant is even more persuasive against the contention of the appellant. A clear inference arises from Ogletree's testimony that there was no understanding or agreement between the parties as to the kind of conveyance to be executed when the quitclaim deed was given. He testifies that he had no conversation whatever with Hyatt during any of the transactions until he was requested to sign the warranty deed; that Hyatt then said he wanted it executed because "he was trying to get a loan from the Federal Government and could not get it without a warranty deed." This plainly does not support an uncontroverted conclusion that the new deed, expressive of the true, original intention of the parties, was being given to reform a previous one which by mutual mistake did not so express them.

The more reasonable inference is that, when the original deed was given, its character did not then seem important. But later it became important to the grantee, plaintiff, to have a warranty deed (either, as he testified, "to complete his abstract of title" or, as argued by counsel for appellee, to fasten liability on the latter for the tax lien of which he (Ogletree) had no knowledge). Hence Hyatt's request for the new deed and the voluntary and gratuitous act of Ogletree in complying.

■ An unbiased construction of the evidence leads to the conclusion that the fact was in substantial dispute as to the considerations which prompted the execution of the subsequent warranty deed. The evidence was not so "clear, exact and convincing," to the exclusion of reasonable adverse inferences—as is the requirement of the rule—that the new deed, being the true intention and agreement of the parties, was executed to reform a previous abortive one. Being so, the trial court was justified in denying recovery and in rendering judgment for the defendant.

■ It follows then that we should not disturb the trial court's findings. The testimony as to these controlling and disputed facts was taken ore tenus. The conclusion thereon by the trial judge will be accorded the same effect on appeal as the verdict of a jury, and will not be disturbed unless clearly contrary to the great weight of the evidence. 2 Alabama Digest, Appeal and Error, ⊜1011(1).

It is our view that the evidence adduced justified the finding below, so the judgment is affirmed.

Affirmed.