ALMON, Justice.
This appeal involves a mineral royalty interest deed. The grantors brought this action to have the deed construed as advocated by the grantors or, failing this, to have the deed reformed. The trial court denied relief, holding that the deed was to be construed as advocated by the grantees and that the evidence did not support reformation of the deed.
The plaintiffs are A. Bruce Dudley, Jr., John N. Horner, J.H. Spencer, R.H. McLeod, and Larry U. Sims. In 1971 these five men purchased 100 acres of land in Mobile County with one-half the mineral rights. This 100-acre tract was subject to a lease referred to herein as the Daws lease, which reserved a Vs royalty to the lessor. The plaintiffs later purchased 20.5 acres in an adjoining section with full mineral rights and no existing lease.
In 1974 Larry Sims heard that Harris Anderson was knowledgeable in oil and gas matters and was handling some oil business in the area for a friend of Sims’s. Sims called Anderson and went to his office to learn about oil and gas transactions.
According to Sims, a man from Mississippi offered plaintiffs a proposal whereby he would lease the 20.5 acre parcel from them for a Vs royalty plus $1000 per acre bonus if the plaintiffs would also convey five royalty acres on the 100-acre tract for $2,400 per acre, or $12,000. A royalty acre is defined as a Vs royalty on the full mineral interest in one acre of land. Sims asked Anderson for advice on the proposal and, according to Sims, Anderson offered to better the proposal by offering a ¾6 royalty and $1000 per acre bonus on the 20.5 acres, provided that the plaintiffs deeded five royalty acres to Anderson.
The plaintiffs did in fact execute a lease with a ¾6 royalty on the 20.5 acres and a royalty deed relating to the 100-acre parcel. Defendant Harris Anderson was named as the lessee in the former instrument and the grantee in the latter. Both instruments are dated December 2, 1974. Because the meaning and application of the royalty deed are at issue in this ease, we shall set the deed out in full:
ROYALTY DEED
“KNOW ALL MEN BY THESE PRESENTS that [the plaintiffs and their wives], (hereinafter called Grantor), for and in consideration of the price and sum of TEN AND MORE ($10.00 and More) DOLLARS and other valuable considerations, cash in hand paid by Harris G. Anderson_ (hereinafter called Grantee), has granted, bargained, sold and conveyed, and does by these presents grant, bargain, sell and convey, unto the said Grantee the mineral royalty interest only, as hereinafter set out affecting and relating to the property described below:
“An undivided one-tenth (Vio) royalty interest only in and to that part of the minerals owned by Grantor in, on or under the following described property in SECTION 35, TOWNSHIP 1 SOUTH, RANGE 1 WEST:
“South Half (S ⅝) of Northeast Quarter (NE ¼) and East Half (E ½) of Southeast Quarter (SE ⅝) of Northwest Quarter (NW ⅝) of Section 35, Township 1 South, Range 1 West, Mobile County, Alabama.
“said interest being subject to the present oil, gas and mineral lease from H.H. Myers and wife, Hermena D. Myers to S.B. Daws, dated March 11, 1971 and recorded in Real Property Book 1032, page 383, of the records of the Office of Probate Judge of Mobile County, Alabama, and to be subject to any and all further leases at Grantor’s option.
“This sale and transfer is made and accepted subject to an oil, gas and mineral lease now affecting said lands, but the royalties hereinabove described shall be delivered and/or paid to the Grantee out of and deducted from the royalties reserved to the Grantor arising out of said lease. This sale and transfer, however, *1209 is not limited to royalties accruing under the lease presently affecting said lands, but the rights herein granted are and shall remain a charge and burden on the land herein described and binding on any future owners or lessees of said lands and, in the event of the termination of the present lease, the said royalties shall be delivered and/or paid out of the whole of any oil, gas or other minerals produced from said lands by the owner, lessee or anyone else operating thereon.
“The grantor herein reserved [sic] the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the grantee herein, the royalty rights herein conveyed; and the grantor further reserves the right to collect and to retain all bonuses and rentals paid for or in connection with any future lease or accruing under the lease now outstanding.
“TO HAVE AND TO HOLD said royalty rights unto the said Grantee, forever; and the said Grantor hereby agrees to warrant and forever defend said rights unto the said Grantee against any person whomsoever lawfully claiming or to claim the same.
“WITNESS the signature of Grantor, this the 2nd of December, 1974.
[Signatures and Notarizations]
“Indorsement as required by Alabama Law: This instrument prepared by Larry U. Sims of Hand, Arendall, Bedsole, Greaves & Johnston, Lawyers, 3000 First National Bank Building, Mobile, Alabama.”
Sims took most of the language in this deed from a royalty deed form given him by Anderson, although he made changes throughout the form. The paragraph containing the property description and the description of the interest conveyed was entirely inserted by Sims. The portion of the deed most acutely in dispute is the description of the interest conveyed as a “Vio royalty interest.”
Anderson assigned his interest in the royalty conveyed by the deed to the other named defendants. In January 1976 the plaintiffs executed a new lease on the 100-acre parcel to AMAX Petroleum Corporation. AMAX was an assignee of Daws’s interest as lessee under the Daws lease, which was due to expire in March 1976. The AMAX lease recites on its face that it supersedes the Daws lease. In the AMAX lease, the plaintiffs reserved to themselves a xk royalty.
The dispute which precipitated this case arose in 1977 when the Getty Oil Company began drilling in the area as assignee of the AMAX lease. Getty apparently proposed to pay defendants Vio of Vs royalty, whereupon Anderson wrote to AMAX and Getty in June and July 1977 claiming Vio of ¼ royalty. Sims contested this claim, saying that defendants were only entitled to Vio of h royalty. Getty then wrote to Anderson, stating that “Mr. Sims advises in substance that your claim to an additional 5 net royalty acres under the December 2, 1974 royalty deed ... is not in accordance with the intent of the transaction,” and suspended payment of the disputed Vio of ⅛.[1]
Plaintiffs filed this suit on November 2, 1977, seeking by the first cause of action of the complaint to have the court:
“declare that the Plaintiffs sold to Defendant, Harris G. Anderson, five royalty acres only; that Defendant Anderson’s subsequent assignees be bound by such declaration; that said royalty deed ... be so construed by order of this Court; and *1210 that said assignments ... also be so construed.”
The second cause of action of the complaint, as amended, averred that “through fraud, mutual mistake of the parties, or a mistake of one party which the other party at the time knew or suspected,” (see Code 1975, § 35-4-153) the deed did not “truly express the intention of the parties as to the exact royalty interest conveyed.” The averments continued that defendants were insisting upon an interpretation that plaintiffs conveyed to Anderson “a one-tenth interest in any and all royalties received by Plaintiffs instead of the true intent of the agreement that Plaintiffs convey to Defendant Anderson five permanent royalty acres.” This count requested the court to revise and reform the deed to express the intention urged by the plaintiffs, and further prayed that the assignments be construed as conveying only the 5 royalty acres intended to be conveyed.
The defendants answered, denying that the intent was to convey only five royalty acres and stating that the deed granted them a Vio royalty interest “not only in the existing S.B. Daws lease, but by its express terms a one-tenth (Vio) royalty interest in any additional oil, gas and mineral lease which the Grantors might execute on the minerals which they own.” They alleged that they were entitled to Vio of the Vi royalty because the AMAX lease “provides for a ¼ royalty payment to mineral royalty owners including the Defendants.” As to the second cause of action, the defendants denied that there was any fraud, mutual mistake of the parties, or mistake of one party which the defendants at the time knew or suspected. They further alleged that, under § 35-4-153, Code 1975,
“even if the allegations of the Second Cause of Action are true, which Defendants deny, any revision of the royalty deed by the Court would prejudice the rights of the Defendants other than Harris Anderson, which Defendants acquired their interests as third parties in good faith and for value.”
Sims and Anderson gave depositions, which were introduced as exhibits at trial. The trial court heard the case without a jury. Only Sims and Anderson testified. The trial court entered a judgment finding that the evidence did not support either the construction of the deed requested by the plaintiffs or reformation of the royalty deed; that there was no fraud, mutual mistake, or mistake of one party which the other at the time knew or suspected; and that the royalty deed truly expressed the intent of the parties. The court therefore ordered that the plaintiffs’ request for relief be denied, that the royalty deed is a valid and binding deed on the parties, and that the defendants are entitled to Vio of the V4 royalties payable under the AMAX lease. Plaintiffs appeal from this judgment.
Plaintiffs argue first that the deed unambiguously supports their position that the rate of the royalty interest was fixed at Vio of Vs. They say this is so because the deed states that the royalty interest conveyed was subject to the Daws lease, which provided a Vs royalty. They assert that the subsequent statements in the deed, that the interest was not limited to royalties accruing under the Daws lease, make the deeded royalty interest a permanent royalty interest rather than a term royalty interest which would terminate with the expiration of the Daws lease. Under this interpretation, the phrases “the rights herein granted,” “the said royalties,” and “the royalty rights herein conveyed” would mean the Vio of Vs permanent royalty upon which plaintiffs insist. They point to the phrase added by Sims, “and to be subject to any and all further leases at Grantor's option,” and state that this gives them the option to extend to defendants the benefit of the increased royalty of the AMAX lease, an option which they have not exercised.
The defendants state that the last-quoted phrase reserves to the plaintiffs the right to lease or not to lease the minerals at their option, but not the right to withhold from defendants the benefits of a lease more favorable than the Daws lease. The phrases lifted from the last three paragraphs of *1211 the deed, in the defendants’ view, are taken out of their context, which clearly shows that the Vio of royalty attaches to whatever royalty plaintiffs reserve in any lease. Finally, defendants point out that the deed mentions neither a Vs royalty nor 5 royalty acres.
We find no merit in plaintiffs’ position that the deed unambiguously grants only five royalty acres, or a Vio of ⅝ royalty. This argument hinges on the plaintiffs’ contention that the phrase “and to be subject to any and all further leases at Grant- or’s option ” means that plaintiffs could choose whether or not to extend the benefits of a more favorable lease to defendants. This is not a reasonable interpretation of the language. With no additional consideration, why would the plaintiffs ever extend additional royalties to the defendants? A much more plausible and natural reading of the language is that the plaintiffs could choose whether or not to execute leases in the future. This retains executive control over the leasing of the minerals in the plaintiffs.
If the plaintiffs do not have the option whether to grant or withhold the benefits of future leases, the fact that the defendants’ interest is to be “subject to” future leases just as it is “subject to” the Daws lease at the time of the conveyance defeats the argument that only the Daws Vs royalty is meant when the deed later refers to “the said royalties” and “the royalty rights herein conveyed.” This reading is consistent with the provisions in the deed that the sale is not limited to the royalties accruing under the Daws lease and that the plaintiffs shall include the defendants’ royalty rights in any future leases. Instruments are to be construed as a whole so as to harmonize their parts whenever possible. Financial Investment Corp. v. Tukabatchee Area Council, Inc., Boy Scouts of America. 353 So.2d 1389 (Ala.1977); Hall v. Gulledge, 277 Ala. 580, 173 So.2d 571 (1965).
The plaintiffs’ second allegation of error is that, assuming the deed does not unambiguously support their interpretation, it is latently ambiguous and should be construed in their favor. They assert that the trial court erred in failing to find as a matter of law that the deed is ambiguous and in failing to construe it in the context of the surrounding circumstances to hold that the intent was to convey only five royalty acres. The plaintiffs argue that several items of evidence prove this intent.
The exhibits which plaintiffs cite are: 1) a sheet with two computations, allegedly in Anderson’s handwriting, one of which multiplies 2400 (the alleged price per royalty acre) times 5 (royalty acres) to equal 12,-000, and the other computing a price of 20,500 dollars for the 20.5 acres leased; 2) a draft signed by Anderson for $32,500 payable to plaintiffs and reciting that it is for an “O G & M lease covering 20.5 acres in Sec. 36, T IS, R 1W,” and “Royalty Deed 5 AC [Sec.] 35”; and 3) a letter from Sims to Anderson. This letter bears the date December 2, 1974, and reads:
“My group has today sold five acres of royalty on minerals in Section 35, Township 1 So., Range 1 West, to group of investors represented by you as their broker. This letter is to confirm my group’s consent to contact you to review any leasing arrangement contemplated by my group involving the five acres made the subject of the royalty deed if the current effective lease expires. It is understood that my group has the legal right to make any and all decisions as to such leasing but we will be glad to have your advice in that regard.”
Sims testified that he dictated this letter in Anderson’s presence at the time Anderson brought him the draft and he delivered the signed deed and lease to Anderson. Sims testified that Anderson smiled or smirked when he looked at the deed, causing Sims to ask, “Now, Mr. Anderson, are you sure that we are conveying the five royalty acres and nothing else?” Anderson replied, according to Sims, “Yes, sir. That’s our deal, five royalty acres, no more, no less, but how about giving me a letter saying that you will, your group will contact me if they ever re-lease.” Plaintiffs *1212 argue that Anderson’s behavior shows that he knew or suspected that the deeded interest would increase with a more favorable lease, contrary to the stated intent.
Defendants respond that the computations were made on the basis of five royalty acres simply because that was the only way to figure the price at the time. Anderson testified:
“A royalty interest can be increased from one to two to three to whatever royalty you might acquire on a lease or you reserve on a lease. So at the time I acquired this, it is true I bought five royalty acres. I paid for five royalty acres but that is one-tenth of the fifty acres that they owned. If they were prudent and good businessmen enough to acquire a lease on there that gives one-fourth, well, that they are—we are not, we are non-executive royalty owners. We have nothing to say and he made it very clear in the deed, very plain in the deed, we have nothing to say about any future leases or any future royalties. That is entirely up to the executive mineral owners. We are at his mercy so to speak, now. But it’s a kind of unwritten thing that he must protect us too. He can’t freeze us out. So, when we acquired the one-tenth interest that would go to any interest that he might get in the future.”
Anderson further testified that rather than saying defendants’ interest increased to ten acres, one could just as accurately say that “each acre of ours became twice as valuable as it was on the day that we acquired it.” He said that if one viewed the situation as plaintiffs owning 45 royalty acres under the Daws lease and defendants owning 5, under the AMAX lease plaintiffs’ interest doubled to 90 royalty acres and defendants’ to 10, rather than, as plaintiffs would have it, their interest increasing to 95 royalty acres and defendants’ share remaining at 5 royalty acres.
We set out this evidence relating to the possibility of a latent ambiguity because proof of a latent ambiguity arises when collateral matters outside the writing show the meaning of the document, unambiguous on its face, to be uncertain. Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981); Gibson v. Anderson, 265 Ala. 553, 92 So.2d 692 (1956). The trial judge, considering the matters set out above, determined that the evidence did not support the construction requested by the plaintiffs. Plaintiffs insist that this judgment is due to be reversed as a matter of law, citing the rule that whether an instrument is ambiguous is a question of law. Mass Appraisal Services, supra; Holt v. Davidson, 388 So.2d 548 (Ala.1980); Miles College, Inc. v. Oliver, 382 So.2d 510 (Ala.1980).
Plaintiffs’ argument does not establish that the trial court is due to be reversed. While Sims’s testimony and the above-referenced exhibits may be said to cast some doubt on the meaning of the deed, this doubt is not strong enough, in light of the recitals on the face of the deed that the defendants’ royalty interest applies to future leases just as to the Daws lease and of Anderson’s testimony regarding the “five royalty acres only” controversy, for us to hold that the trial court erred as a matter of law in not finding the deed ambiguous and not giving it the construction urged by plaintiffs. Moreover, even if we were to hold that the trial court erred in not finding a latent ambiguity, the remainder of the court’s judgment makes it clear that the court, as finder of fact, found the facts not to support plaintiffs’ interpretation of the deed. This finding would be supported by the presumptions of the ore ' tenus rule, and the facts, as set out above, support the trial court's conclusion.
The plaintiffs’ final allegation of error is that the trial court erred in light of the evidence in finding no basis for reformation of the deed. The chief aspect of the evidence not already discussed above pertinent to this argument regards testimony by Sims that, after this controversy arose, he searched the probate records of Mobile County and found some thirty or forty royalty deeds prepared by Anderson. *1213 Plaintiffs introduced one of these into evidence. It describes various parcels in numbers of royalty acres and specifies after the list of parcels that “It is the intention of Grantor by this royalty deed to convey to Grantee, its successors and assigns Five (5) royalty acres .... ”
Sims testified that all the deeds prepared by Anderson similarly specified the number of royalty acres being conveyed. He and the other plaintiffs argue that Anderson, upon reading the deed prepared by Sims, was aware or suspected that Sims had made a mistake in failing to limit the conveyance to a certain number of royalty acres. Sims further testified that he described the interest conveyed as a Vio royalty interest because Anderson told him that would describe the five royalty acres being conveyed, Vio of fifty royalty acres being five acres.
Defendants respond that to have a deed reformed, a party must produce clear, convincing, and satisfactory evidence, citing Code 1975, § 35-4-153; Fidelity Serv. Ins. Co. v. A.B. Legg & Sons Burial Ins. Co., 274 Ala. 94, 145 So.2d 811 (1962); Taylor v. Burns, 250 Ala. 218, 34 So.2d 5 (1948); Great Atlantic & Pacific Tea Co. v. Engel Realty Co., 241 Ala. 236, 2 So.2d 425 (1941); Kelley v. Spencer, 213 Ala. 612,105 So. 802 (1925); and Lipham v. Shamblee, 205 Ala. 498, 88 So. 569 (1921); Hyatt v. Ogletree, 31 Ala.App. 8, 12 So.2d 397 (1942). The above discussion shows that the evidence was in such dispute that the trial court cannot be held in error for holding the plaintiffs did not sustain their burden of proof.
For the reasons stated, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.

. The disputed royalty amounts to 5 royalty acres for the following reason: Plaintiffs owned ½ the minerals in the 100 acres. This equaled 50 mineral acres within the terms of the oil and gas industry, one mineral acre being defined as the full mineral rights in one acre. Because a royalty acre is defined as a ⅛ royalty on one mineral acre, plaintiffs owned 50 royalty acres under the Daws lease. When plaintiffs conveyed a Via royalty interest to Anderson while the Daws lease was in effect, Vio of these 50 royalty acres equalled 5 royalty acres. The AMAX ¼ (2/a) royalty lease may be viewed as creating 100 royalty acres. Thus, contend the defendants, their Vio royalty interest amounts to 10 royalty acres under the AMAX lease.