James A. Philips, Albert J. Tully, Mobile, Ala., for plaintiffs-appellants.

Charles R. Butler, Jr., Mobile, Ala., for defendant-appellee.

William H. **OSWELL**, Mary Tabbert Oswell, William Hamilton Oswell, Jr., Charles Oswell, and William Robert Oswell, Plaintiffs-Appellants,

v.

**TENNESSEE LAND AND EXPLORATION COMPANY,**
Defendant-Appellee.

No. 84–7737.

United States Court of Appeals,
Eleventh Circuit.

Nov. 4, 1985.

Before VANCE and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

VANCE, Circuit Judge:

This diversity case involves the construction of an oil lease. Plaintiffs appeal from entry of summary judgment in favor of the defendant oil company. At issue is a conflict between a printed lease term exempting producing oil wells from any forfeiture induced by failure to drill further wells, and a typewritten rider mandating loss of *all* rights and claims under the lease. The district court gave effect to the printed

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

term. Because we find that the terms conflict and because in cases of conflict typewritten terms prevail over printed terms, we reverse.

In January 1981 appellants, various members of the Oswell family, entered into an oil lease with James D. Turner, who in turn assigned it to defendant.[1] The lease contains four paragraphs at issue here. The first two, paragraphs 9 and 13 of the printed lease, states that failure of the lessee to comply with lease obligations would lead to forfeiture of rights under the lease except to acreage "then included in a producing unit."[2] Paragraph 13, common in oil leases, is known as a Pugh clause. For convenience we will refer to these two clauses jointly as the Pugh clause.

The second two clauses are paragraphs 1 and 4 of Exhibit B, a typed rider. Paragraph 1 imposes on defendant the duty to drill a test well the first year of the lease and no fewer than two wells per year thereafter or "Lessee forfeits *all* rights and claims to this lease" (emphasis added).[3] Paragraph 4 states: "In the event of any conflicts between the terms of this printed lease and the provisions contained in Exhibit 'B', the provisions contained in Exhibit 'B' shall be controlling."

In October 1981 defendant stated its intention to drill a test well and eventually did so. In November 1982 defendant sought and obtained an extension of the Exhibit B drilling requirement deadline from January 1 to August 1, 1983. Defendant drilled no wells beyond the first test well and in August 1983 informed plaintiffs it intended no further drilling. Plaintiffs then demanded surrender and cancellation of the lease in accord with its forfeiture provisions. Defendants complied except for the producing test well and its surrounding acreage. Plaintiffs then filed suit in district court seeking cancellation of the excepted portion of the lease and requesting the award of damages. Plaintiffs and defendants both filed motions for summary judgment. The district court, in granting defendant's motion, held that there was no conflict between the printed Pugh clause and the typed forfeiture clause, thus giving continued effect to the Pugh clause. Plaintiffs appeal. Both sides agree that the drilling requirement was not met, and that there are no other issues of fact in dispute. The only question before us is whether the language of the lease requires a limited or a complete forfeiture.

Defendant argues that the district court followed Alabama law requiring it to construe instruments so as to harmonize their parts whenever possible. *Dudley v. Fridge*, 443 So.2d 1207, 1211 (Ala.1983). The plain and clear meaning of an instrument's terms should be given effect, terms should be construed with reference to one another, "and a construction adopted which gives effect to all the terms used." *Federal Land Bank v. Terra Resources, Inc.*, 373 So.2d 314, 319–20 (Ala.1979). When terms directly conflict, however, it is impossible to construe them to give effect to all terms used. We believe that the district court's attempt at harmonization failed to

---

1. Several leases were signed, but because their terms are identical we refer to them in the singular.

2. Paragraph 9 provided, in relevant part:
   The failure of Lessee to comply with the obligations imposed by this lease ... shall result in the cancellation of said lease as to all lands covered thereby save as to that acreage then included in a producing unit.
   Paragraph 13 provided, in relevant part:
   Any provision of this lease or agreement to the contrary notwithstanding, it is expressly stipulated and provided that production from or operations upon any unit (either gas or oil) including less than all of the acreage covered by this lease will serve to hold this lease in force and effect (if such production or operations otherwise comply with the requirements of this lease to maintain same in force and effect) only with respect to the acreage actually included in such unit, and that this lease will terminate as to the acreage outside such unit (herein called "Outside Acreage") ....

3. Paragraph 1 of the rider states, in relevant part:
   1. That not less than one oil test well shall be drilled (to the Lower Tuscaloosa Formation) within 12 months from the above date, and not less than two wells per year thereafter, or Lessee forfeits all rights and claims to this lease.

give proper effect to the typewritten forfeiture clause in Exhibit B. A clause that exempts some portion of a lease from forfeiture, as does the Pugh clause here, is in direct and irreconcilable conflict with a clause mandating complete forfeiture of "all rights and claims," as in Exhibit B.

The rule is well settled that where terms are inconsistent, typewritten terms control printed terms.

> This court has long recognized that written matter prevails over printed matter, since it is "presumed to have commanded the stricter attention of the parties." [Citations omitted]. Since typewritten terms, like handwritten terms, represent the more deliberate and immediate expression of the parties' meaning than printed terms, typewritten terms control printed terms.

*Industrial Machinery, Inc. v. Creative Displays, Inc.*, 344 So.2d 743, 749 (Ala. 1977). This standard rule of contract construction is explicitly accepted by the parties through the second quoted paragraph of the rider. Because the Pugh clause and the Exhibit B forfeiture clause conflict too seriously to be harmonized, this rule of construction requires that the latter be given effect.[4]

Defendant makes much of a typed clause declaring the rider to be incorporated into the lease, maintaining that such incorporation removes any special weight given to typewritten terms. We find no merit in this argument. The conflict between terms still remains and the policy reasons for preferring typewritten terms over printed terms are not overcome by "incorporation into" the lease.

We therefore REVERSE the summary judgment for defendant and REMAND for entry of summary judgment for plaintiff on the issue of forfeiture and for further proceedings consistent with this opinion.

---

4. Plaintiffs argue that oil leases containing drilling requirements are to be construed in favor of the grantor. They also make much of an advisory letter to defendant from its own attorney which plaintiffs read to betray defendant's understanding that failure to meet the drilling requirement would lead to forfeiture of all rights under the lease. Because we base our decision on the text of the lease itself and the unequal status of conflicting printed and typewritten terms, we need not reach either of these contentions.